**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STACEY ANNE O'BRIEN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO.   19-cv-5433 |
| | : | |
| ANDREW SAUL,[1] | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

<u>**MEMORANDUM OPINION**</u>

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                    **November 19, 2020**

Stacey O'Brien (Plaintiff) filed this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's decision denying her claim for Disability Insurance Benefits under Title II of the Social Security Act.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's request for review is DENIED.

# I.      PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits and widow's benefits on February 22, 2017.  (R. 16).  In both applications, Plaintiff alleged disability beginning on January 30, 2017 due to impairments such as osteoarthritis and psoriatic arthritis in her hands, feet, and hips, as well as hypertension and coronary atherosclerosis resulting from a past heart attack.  (R. 16, 19).  Plaintiff's applications were initially denied on May 15, 2017, and she requested a hearing from

---

[1]  Andrew M. Saul was confirmed as Commissioner of the Social Security Administration on June 4, 2019.  Pursuant to Fed. R. Civ. P. 25(d), I have substituted Andrew M. Saul as defendant in this suit.

an Administrative Law Judge (ALJ), which occurred on October 10, 2018.  (R. 16).  Plaintiff,

represented by an attorney, appeared and testified at the hearing, as did an impartial vocational

expert (VE).  (R. 32–52).  On December 21, 2018, the ALJ issued a decision denying benefits

under the Act.  (R. 16–26).  Plaintiff requested review of the ALJ's decision, and the Appeals

Council her request on October 28, 2019, making the ALJ's December 21, 2018 decision the

final decision of the Commissioner.  (R. 2–4).

Plaintiff filed a complaint in this Court on November 18, 2019.  (ECF No. 1).  The

Commissioner filed an Answer on February 24, 2020.  (ECF No. 11).  Plaintiff filed a Motion for

Summary Judgment on April 10, 2020, and the Commissioner filed a Response on May 15,

2020.  (ECF No. 15, 16).  The parties have consented to my jurisdiction.  (ECF No. 6).

## II.      FACTUAL BACKGROUND

The Court has reviewed the administrative record in its entirety, and summarizes here the

evidence relevant to the instant request for review.

Plaintiff was born on August 25, 1958, making her fifty-eight years old as of January 30,

2017, her alleged disability onset date.  (R. 35, 296).  She previously worked as a travel

reservation counselor, and as an airport transportation agent.  (R. 24, 36–39).

On July 23, 2016, Plaintiff was admitted to St. Mary Medical Center with complaints of

chest pain and pain in her jaw.  (R. 295–98).  After an examination, Plaintiff was given a balloon

angioplasty and a drug-eluting stent implantation.  (R. 312).  Since this procedure, her cardiac

condition has remained stable, and in August 2018 she was deemed to be "doing well."  (R. 736).

Plaintiff initially stopped working after her heart attack in 2016, but later returned to

work.  (R. 46).  After four months, Plaintiff again stopped work due to pain in her hands, knees,

hips, and feet, as well as frequent fevers.  (R. 46–47).  The medical record indicates that these

symptoms were the result of psoriatic arthritis and degenerative joint disease, which the ALJ categorized as severe impairments.[2]  (R. 18).

### A.     Rheumatology Treatment

On January 24, 2017, Plaintiff was examined by Dr. Ramesh Kumar, a rheumatologist with Ocean Rheumatology, P.A.  (R. 667).  She presented with pain and stiffness in her hands, knees, and feet, as well as swelling of her hands and wrists.  *Id.*  Dr. Kumar's examination noted tenderness swelling in Plaintiff's wrists.  *Id.*  He also noted normal range of motion in Plaintiff's wrists, hips, and knees, and that plaintiff had a normal gait and 10/10 grip strength in both hands. *Id.*  His assessment of Plaintiff included inflammatory arthritis/psoriasis and osteoarthritis.  *Id.*

Plaintiff next visited Dr. Kumar on February 15, 2017.  (R. 665).  Dr. Kumar's examination noted tenderness and swelling in Plaintiff's wrists and knees, with a normal range of motion.  *Id.*  Dr. Kumar also noted that Plaintiff's gait was normal.  *Id.*

On March 29, 2017, Dr. Kumar examined Plaintiff and noted tenderness and swelling in bilateral wrists, normal range of motion, 10/10 grip strength in bilateral hands, and normal gait. (R. 669).  On May 25, June 7, July 19, and September 11, 2017, Plaintiff presented for reevaluation with similar complaints, and Dr. Kumar's examinations revealed similar results. (R. 671, 673, 675, 677).

On January 24, 2018, Plaintiff presented with pain all over, with the worst symptoms in her hips and bilateral hands.  (R. 679).  Dr. Kumar advised Plaintiff to see an orthopedist for right/left hip arthritis.  *Id.*

---

[2]  Plaintiff's medical records also indicate a history of colitis, foot pain and fractures, obesity, and depression.  (R. 18).  However, the ALJ found that these impairments did not significantly limit Plaintiff's ability to function and therefore were not severe.  (R. 18–19). Plaintiff does not take issue with the ALJ's findings regarding these impairments.  *See generally* Pl.'s Br., ECF No. 15.

On September 25, 2018, when Plaintiff next visited Dr. Kumar, he noted in his "History of Present Illness" that "[t]he problem is severe. The symptoms are constant. The problem has not changed." (R. 762). His physical examination of Plaintiff found a normal gait, with tenderness and swelling in the wrists. (R. 764). He also found normal range of motion in the wrists, decreased range of motion in the hips, and decreased grip strength. *Id.*

### B.      Orthopedic Treatment

On March 2, 2017, Plaintiff began treatment with Mercer-Bucks Orthopaedics, complaining of pain including bilateral hands, hips, knees, and feet. (R. 570). A physical examination revealed limited range of motion about the hip, specifically in flexion internal and external rotation. (R. 571). Plaintiff had 4+/5 strength resisted hip flexion and 5/5 strength knee flexion, with pain exacerbated by extension over the iliotibial band and Gerdy's tubercle. *Id.* Plaintiff also complained of bilateral plantar foot pain, though her skin was intact, there was no evidence of joint effusion swelling, no evidence of trauma, and no instability to stress examination of the knee or ankle. *Id.* Her light-touch sensory function was intact, and she walked with a significantly antalgic gait. *Id.* She had a cyst over the DIP joint of the second digit, most likely due to underlying arthritic changes. *Id.* An assessment of X-rays completed at St. Mary's Medical Center confirmed end-stage arthritic change to Plaintiff's bilateral hips, near normal-appearing knees, and hands relatively free of advanced arthritis. *Id.* Dr. David Hardeski recommended an injection of lidocaine and Kenalog for Plaintiff's hip, as well as physical therapy and seeing a joint replacement specialist for her hip arthritis. (R. 571).

On March 13, 2017, Plaintiff was examined again and found to have moderate hip restriction with significant pain during passive internal and external rotation, as well as a positive Stinchfield bilaterally. (R. 576). Her neurologic exam was grossly intact, and her skin was warm, dry, and intact. *Id.*

4

On March 22, 2017, examination showed that Plaintiff had a full range of motion in the shoulders, elbows, wrists, and fingers, as well as a normal gait.  (R. 579).  Her bilateral hands possessed intact skin, no swelling, no rotational deformity, and full range of motion at the MP, PIP, and DIP joints in flexion and extension.  *Id.*  She had no significant thenar atrophy, a negative Tinel's over the carpal tunnel, a negative Phalen's test, and a negative Durkin's compression test.  *Id.*

On March 30, 2017, Plaintiff presented with pain in her hands, shoulders, hips, knees, and feet, though her examination focused mainly on her feet.  (R. 582).  Plaintiff was found to have a mild pes planus deformity but no abnormal callous formation, normal light touch sensory function, and 5/5 strength in dorsiflexion, plantar flexion, and inversion and eversion.  *Id.*  She also had a full painless range of motion at the knees and 5/5 strength.  *Id.*  During this visit she required a walker.  *Id.*  Dr. Hardeski again recommended physical therapy and explained to Plaintiff that he believed her abnormal gait was "due to her multitude of painful joints" that "continue to contribute to each other making each pain worse."  *Id.*

On April 11, 2017, Plaintiff presented with right foot pain.  (R. 585).  Examination revealed soft tissue swelling, no sensory or motor deficits, intact skin, and a mildly antalgic gait.  *Id.*

On April 19, 2017, Plaintiff's bilateral hands were again found to have intact skin, no swelling, no rotational deformity, and full range of motion at the MP, PIP, and DIP joints.  (R. 588).  There was no significant thenar atrophy, a negative Tinel's sign, negative Phalen's test, and negative Durkin's test.  *Id.*

On April 25, 2017, Plaintiff presented with full painless range of motion of the shoulders, elbows, wrists, and fingers.  (R. 594).  An X-ray of her right foot revealed a fracture about the second cuneiform.  *Id.*

On May 16, 2017, Plaintiff exhibited swelling and tenderness over her right foot second cuneiform.  (R. 652).  Her skin was intact, and her gait was mildly antalgic.  *Id.*

On June 6, 2017, Plaintiff presented with left foot pain.  (R. 654).  X-rays showed no obvious fracture, but PAC Rick Esposito concluded that Plaintiff's left foot might possibly be sprained due to a stress fracture.  *Id.*  Examination of the upper extremities again found full painless range of motion of the shoulders, elbows, wrists, and fingers.  *Id.*

On October 13, 2017, PAC Daniel Kawash noted that Plaintiff had "failed conservative therapies including activity modification, ambulatory assistance, oral anti-inflammatory medications, as well as physical therapy."  (R. 659).  It was then suggested that Plaintiff undergo surgery and receive a total hip arthroplasty.  *Id.*  At Plaintiff's next visit with Mercer-Bucks, however, she elected to receive a hip injection of lidocaine and Kenalog instead.  (R. 664).

### C.      Long-Term Disability Evaluation

On June 27, 2017, CRNP Laura Okami examined Plaintiff on behalf of long-term disability carrier Prudential.  (R. 616).  In her report, Okami found Plaintiff incapable of any work capacity, and found a blanket zero percent capacity for all activities such as climbing stairs, stooping, reaching desk level, and lifting.  *Id.*  Okami concluded that Plaintiff could not work due to her "painful crippled state."  (R. 615).

### D.      Lay Testimony

With respect to the non-medical evidence, Plaintiff testified at the October 10, 2018 administrative hearing.  (R. 35–49).  Plaintiff testified that she stopped working as a travel counselor due to daily fevers, an inability to type, and pain and swelling in her hands and legs, making her unable to sit for very long.  (R. 36, 39).

Regarding her medical conditions, Plaintiff testified that she had "trigger thumbs" and inflammation in her hands due to her psoriatic arthritis.  (R. 39).  The ALJ noted that Plaintiff's hands were balled up during the hearing.  (R. 40).

Plaintiff testified that she can sit for up to an hour, and can only stand for a couple of minutes.  (R. 41–42).  She further testified that she can walk for ten yards with a walker or a cane, but cannot do so without.  (R. 42).  Regarding activities of daily living (ADLs), Plaintiff testified that she drives once a week, goes grocery shopping, and sometimes helps her daughter cook.  (R. 43–44).  She testified that she lives with both of her adult daughters, who help her with her daily activities.  (R. 43).

III.    ALJ'S DECISION

Following the administrative hearing held on Oct. 10, 2018, the ALJ issued a decision in which he made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2.    It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50.  The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

3.    The prescribed period ended on July 31, 2018.

4.    The claimant has not engaged in substantial gainful activity since January 30, 2017, the alleged onset date.

5.    The claimant has the following severe impairments: Osteoarthritis/Degenerative Joint Disease; Osteopenia; Iliotibial Band Bursitis; Psoriasis Arthritis; Stable

Coronary Atherosclerosis, s/p Stent Implantation; Hypertension; and
Hyperlipidemia.

6.      The claimant does not have an impairment or combination of impairments that
meets or medically equals the severity of one of the listed impairments in 20 CRF
Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

7.      The claimant has the residual functional capacity to perform the full range of
sedentary[3] work as defined in 20 CFR 404.1567(a).

8.      The claimant is capable of performing past relevant work as a Reservations Clerk.
This work does not require the performance of work-related activities precluded
by the claimant's residual functional capacity (20 CFR 404.1565).

9.      The claimant has not been under a disability, as defined in the Social Security
Act, from January 30, 2017 through the date of this decision (20 CFR
404.1520(f)).

(R. 17–24).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 24).


## IV.    LEGAL STANDARD

To be eligible for Social Security benefits under the Act, a claimant must demonstrate to
the Commissioner that she cannot engage in substantial gainful activity because of a medically
determinable physical or mental impairment which can be expected to result in death or which
has lasted or can be expected to last for a continuous period of at least twelve months.  42 U.S.C.
§ 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

---

[3]  Sedentary work involves lifting no more than 10 pounds at a time and occasionally
lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is
defined as one which involves sitting, a certain amount of walking and standing is often
necessary in carrying out job duties. Jobs are sedentary if walking and standing are required
occasionally and other sedentary criteria are met.

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work.  If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 416.920(a)(4).  The disability claimant bears the burden of establishing steps one through four.  If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, he is able to perform substantial gainful activities in jobs existing in the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it.  *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal issues.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.    DISCUSSION

In her request for review, Plaintiff contends that the ALJ erred in determining that Plaintiff was not disabled because the ALJ: (1) failed to accord proper weight to CRNP Laura Okami's medical evaluation; (2) improperly discredited Plaintiff's subjective complaints; and (3) failed to follow the Vocational Expert's (VE) conclusion regarding the non-existence of jobs given Plaintiff's limitations.  (Pl.'s Br. at 10, 12, 13, ECF No. 15).  I will address each of Plaintiff's arguments in turn.

### A.    Weight of the Medical Evidence

Plaintiff first argues that the ALJ erred by failing to accord proper weight to the opinion evidence of CRNP Laura Okami.  (Pl.'s Br. at 10, ECF No. 15).  The Commissioner responds that the ALJ properly considered Okami's opinion as a non-acceptable source.  (Resp. at 8, ECF No. 16).  I find the Commissioner's argument persuasive.

In weighing the medical evidence, the Social Security Regulations differentiate between "acceptable medical sources" and "other sources," or non-acceptable sources.  *See* 20 C.F.R. §§ 404.1502, 404.1513(a), 404.1513(d).  Only acceptable sources may be considered treating sources and thereby entitled to controlling weight.  *See* SSR 06-03p, 2006 WL 2329939, at *2. By contrast, an ALJ may consider non-acceptable sources in assessing a claimant's disability, and may reject or accept the opinion after explaining his reasons for doing so.  *See Hartranft v. Apfel*, 181 F.3d 358, 361–62 (3d Cir. May 18, 1999) (finding ALJ properly afforded little weight to the opinion of a chiropractor when that opinion was inconsistent with acceptable sources and claimant's own account of his activities); *Weidman v. Colvin*, 164 F.Supp.3d 650, 663–64 (M.D. Pa. Sept. 30, 2015) (finding ALJ properly afforded no weight to the opinion of a nurse practitioner when the ALJ cited conflict with the medical evidence of record); *contrast Rivera v. Colvin*, 2016 WL 1720423, at *6 (E.D. Pa. Apr. 29, 2016) (finding ALJ erred in affording no

weight to the opinion of a nurse practitioner where the ALJ ignored the nurse practitioner's treatment notes from numerous occasions when she physically examined and treated claimant).

In this case, Plaintiff admits that Okami, a nurse practitioner, is a non-acceptable source, but contends that the ALJ should have given Okami's opinion more weight because it was consistent with the rest of the medical record. (Pl.'s Br. at 10, 11–12, ECF No. 15). However, the ALJ in fact found several inconsistencies between Okami's opinion and the medical record, and offered a thorough explanation of his reasons for giving it little weight. (R. 23).

First, the ALJ found that Okami's opinion did not include an adequate function-by-function analysis of what Plaintiff could still do despite her symptoms. *Id.* Upon a full review of the record, I find that the ALJ's conclusion is substantially supported. Okami's opinion, unlike the other medical evidence of record, does not indicate that she performed a physical examination of Plaintiff, and does not include any analysis of Plaintiff's physical functioning, such as grip strength, gait, or range of movement. (R. 615-19; *contrast* R. 571). Rather, Okami's opinion includes only a broad indication that Plaintiff's "immune" and "musculoskeletal" bodily functions are affected by her impairment. (R. 618). Okami did not indicate on the section of her report entitled "Physician Certification" whether her opinion was based on Plaintiff's self-reported severity of symptoms or on objective findings. (R. 615). This lack of specificity shows the ALJ's conclusion that Okami's opinion did not include an adequate function-by-function analysis to be proper.

Second, the ALJ found Okami's claims that Plaintiff was in a "painful crippled state" to be inconsistent with the rest of the record. (R. 23). The ALJ explained his decision by referring to the objective medical record. For example, the ALJ noted how physical examination of the Plaintiff by an orthopedic specialist on April 24, 2017 showed her to be "doing well overall," with a full range of motion at the MP, PIP, and DIP joints, intact skin with no swelling and no

rotational deformity, grossly intact sensation, no significant thenar atrophy, a negative Tinel's sign, a negative Phalen's test, and a negative Durkin's compression test. (R. 601–02). The ALJ also considered the September 25, 2018 opinion of Plaintiff's rheumatologist Dr. Kumar, who found decreased grip strength but adequate range of motion in the shoulders, elbows, and wrists. (R. 764). Finally, regarding Plaintiff's lower extremities, the ALJ considered Plaintiff's most recent visit with Mercer-Bucks Orthopaedics, which showed that Plaintiff walked with a normal gait, and had elected to forgo hip surgery in favor of the more conservative treatment of hip injections. (R. 663–64).

Plaintiff argues that Okami's opinion regarding the severity of Plaintiff's impairments is corroborated by the other treatment providers of record. (Pl.'s Br. at 11, ECF No. 15). Specifically, Plaintiff points to the "History of Present Illness" portion of Dr. Kumar's report, which notes Plaintiff's joint pain as "severe" and "constant;" Plaintiff's orthopedic treatment noting Plaintiff as having "incredibly limited range of motion about the hip;" Plaintiff's 2016 X-rays confirming arthritis in her hands, wrists, and hips; and Plaintiff's own reports of her symptoms. *Id.* The ALJ in fact found Plaintiff's impairments to be severe, consistent with Dr. Kumar's report, and restricted her to sedentary work. (R. 18, 20, 22). However, as the ALJ noted, Okami's specific characterization of Plaintiff's impairments as a "painful crippled state" goes beyond the level of severity indicated by the rest of the medical record. Okami's description of Plaintiff as "crippled" is far more severe than the findings that she consistently possessed an adequate range of motion and a normal gait, and was noted as "doing well overall." (R. 764, 663–64, 601). Moreover, Okami's description of Plaintiff as having zero capacity in practically all activities is at odds with Plaintiff's own hearing testimony that she engages in ADLs such as driving, grocery shopping, and cooking. (R. 43–44).

In sum, the severity of Plaintiff's impairments as indicated by the medical record is inconsistent with Okami's opinion that Plaintiff's impairments left her in a "painful crippled state," and the ALJ referred to these inconsistencies.  Based on *Hartranft* and *Weidman*, the ALJ thus properly explained his decision to afford Okami's opinion little weight.

Therefore, I find that the ALJ properly weighed CRNP Okami's opinion, and substantial evidence supports his decision to afford it little weight.  Plaintiff's request for relief on this basis will be denied.

### B.    Subjective Complaints of Pain

Plaintiff also contends that the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain and other symptoms.  (Pl.'s Br. 12–13, ECF No. 15).  Under Social Security Ruling 16-3p, the ALJ must follow a two-step process in evaluating the Plaintiff's subjective symptoms: (1) determine if there is an underlying medically determinable physical or mental impairment, shown by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce the Plaintiff's pain or symptoms; then (2) evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the Plaintiff's functioning.  SSR 16-3p, 2016 WL 1119029, at *4-8.  In evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ must consider relevant factors such as the objective medical evidence, evidence from medical sources, treatment course and effectiveness, daily activities, and consistency of Plaintiff's statements with the other evidence of record.  *Id.*

It is within the province of the ALJ to evaluate the credibility of a claimant.  *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).  "Although 'any statements of the individual concerning [his] symptoms must be carefully considered,' the ALJ is not required to credit them."  *Chandler*, 667 F.3d at 363 (citing SSR 96–7p and 20 C.F.R. § 404.1529(a)).  An ALJ's

"findings on the credibility of [a] claimant [] 'are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'" *Irelan v. Barnhart*, 243 F. Supp. 2d 268, 284 (E.D. Pa. 2003) (citation omitted). An ALJ may disregard a claimant's subjective complaints when contrary evidence exists in the record. *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993). However, the ALJ must provide his reasons for discounting a claimant's testimony. *Burnett*, 220 F.3d at 122; *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

In this case, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. 21). However, he also concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id*.

In reaching this conclusion regarding Plaintiff's subjective symptoms, the ALJ pointed to the stability of Plaintiff's conditions during the disability period. The ALJ noted that medical records from March, April, and June 2017 showed that Plaintiff had experienced swelling and weakness in both hands. (R. 21–22). However, the ALJ also pointed out that during these visits, Plaintiff exhibited a full painless range of motion in the shoulders, elbows, wrists, and fingers, as well as full grip strength bilaterally. *Id.* The ALJ noted that in April 2017, Plaintiff's orthopedist commented that she was "doing well overall," and that her skin was intact with no swelling, there was full range of motion at the MP, PIP, and DIP joints in flexion and extension, her sensation was grossly intact, there was a negative Tinel's sign and Phalen's test, and that Plaintiff did not have any significant thenar atrophy. *Id.*; R. 601–02.

With regard to Plaintiff's lower extremities, the ALJ further considered the observations of Plaintiff's orthopedist, which found a limited range of motion about the hip, antalgic gait, and

4+/5 strength, which confirmed the necessity of confining Plaintiff to sedentary work.  *Id.*
However, the ALJ also observed that Plaintiff's gait was normal in June 2017, that in October
2017 she could ambulate normally with a cane, and that in September 2018 she was observed
ambulating independently.  *Id.*  The ALJ noted that in October 2017, Plaintiff opted for hip
injections instead of considering surgery.  *Id.*

Overall, Plaintiff's medical records show that she frequently possessed a normal gait,
normal range of motion in her joints, and full or nearly full grip strength.  After thoroughly
considering the evidence of record, the ALJ concluded that Plaintiff's subjective complaints
were not entirely consistent with the level of functioning reflected by the medical records.  The
ALJ's conclusion was therefore supported by substantial evidence.

Plaintiff briefly argues that the ALJ erred by not considering her consistent work history
when evaluating her subjective complaints.  (Pl.'s Br. at 13, ECF No. 15).  However, work
history is only one factor to be considered in assessing a claimant's credibility.  *See Cox v.
Colvin*, No. 15-1768, 2017 WL 2772299, at *8 (E.D. Pa. Jan. 31, 2017) (citing *Salazar v. Colvin*,
No. 12–6170, 2014 WL 6633217, at *7 (E.D. Pa. Nov. 24 2014)) ("The fact alone that a claimant
has a long work history does not require a remand, particularly when medical evidence does not
support a claimant's testimony of the extent of her limitations."); *c.f. Dobrowsky v. Califano*, 606
F.2d 403, 409 (3d Cir. 1979).

Here, the ALJ did not explicitly address the Plaintiff's fifteen-year work history in his
consideration of Plaintiff's subjective complaints.  (R. 21–24).  However, as held by the court in
*Cox*, the mere fact that Plaintiff has a long work history does not on its own require remand,
especially since the ALJ properly determined that her subjective complaints were not entirely
reflected in the medical record.

Accordingly, I conclude that Plaintiff's request for review on this basis should be denied.

C.       **Vocational Expert's Hypothetical**

Finally, Plaintiff argues that the ALJ erred by failing to adopt the VE's opinion voiced

when answering a hypothetical question posed by the ALJ.  (Pl.'s Br. at 13, ECF No. 15).

Plaintiff notes that, during the hearing, the ALJ asked the VE whether any jobs would exist if the

ALJ were to find Plaintiff's testimony regarding her subjective symptoms credible, and the VE

replied "no."  (*Id.*; R. 50).  In response, the Commissioner argues that the ALJ's hypothetical

questioning limiting Plaintiff to sedentary work was consistent with the medical record, and

therefore proper.  (Resp. at 13, ECF No. 16).

Plaintiff's argument here seems, in fact, to be a reiteration of her argument that the ALJ

should have credited her subjective complaints.  Plaintiff argues that the ALJ did not accept the

VE's response to his hypothetical, which was that no jobs would exist if Plaintiff's testimony

were to be found credible.  However, as discussed above, the ALJ did *not* find Plaintiff's

subjective complaints to be credible.  Because the ALJ's hypothetical to the VE was based on the

condition that the ALJ would find Plaintiff's testimony credible, the VE's response – that no jobs

would exist – applies only when that condition has been satisfied.  Here, it has not, and therefore

this hypothetical does not apply to the ALJ's finding.

Notably, the ALJ also posed a hypothetical question to the VE asking if Plaintiff could

return to her previous work if he were to find her capable of sedentary work, to which the VE

responded "yes."  (R. 50).  The ALJ ultimately found Plaintiff capable of sedentary work, a

finding that was based on substantial evidence.  Therefore, Plaintiff's argument that the ALJ did

not follow the VE's recommendations is unpersuasive, and I find that the ALJ properly

considered the VE's testimony.

## VI.     CONCLUSION

For the reasons set forth above, I find that the ALJ's findings are supported by substantial evidence.  Accordingly, Plaintiff's request for review is **DENIED**.  An appropriate Order follows.

BY THE COURT:

   /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge